IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO NATIVIDAD, *Plaintiff,* v. DETECTIVE PAUL RALEY, et al., *Defendants.* | CIVIL ACTION NO. 22-5061 |

**PAPPERT, J.**                                                                                                 November 9, 2023

### MEMORANDUM

Ricardo Natividad sued the City of Philadelphia, three Philadelphia police detectives and two Philadelphia assistant district attorneys after Natividad was sentenced to death and spent nearly twenty-four years in prison in connection with a murder for which his conviction was ultimately vacated. Pursuant to 42 U.S.C. § 1983, Natividad alleges that the officers and prosecutors conspired to deprive him of a fair trial and manufactured a case against him by fabricating evidence and withholding exculpatory evidence. He claims these violations of his constitutional rights were caused by a longstanding City policy or custom.

The Defendants move to dismiss most of the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). The prosecutors cite absolute immunity for their conduct, while the City and police officers argue Natividad has not alleged facts specific enough to establish a civil rights conspiracy, or to state a claim for municipal liability.

1

The Court grants the motions in part and denies in part. The prosecutors are entitled to absolute immunity, though Natividad will be allowed to amend his complaint one last time to include the allegation that one of them defied court orders by refusing to disclose certain discovery during post-conviction proceedings. Natividad plausibly alleges the officers conspired to deprive him of his due process rights and took overt acts in furtherance of the alleged conspiracy, and that a City policy or custom led to the violation of his constitutional rights.

I

Following Robert Campbell's 1996 murder at a West Philadelphia gas station, a squad of Philadelphia police detectives, including Paul Raley, James Dougherty and Arthur Mee were assigned to investigate. (Am. Compl. ¶¶ 9, 27, ECF 19). Ricardo Natividad emerged as a suspect in Campbell's killing after his friend, Byron Price, implicated him. (*Id.* ¶ 10, 12).

Natividad alleges all evidence against him was fabricated by the detectives as well as prosecutors assigned to the case, Richard Sax and Charles Gallagher. (*Id.* ¶ 31). He claims Price was coached by the detectives and prosecutors in exchange for a promise not to be prosecuted as an accessory. (*Id.* ¶ 9–10). In exchange for this favor, Price contradicted his initial statement to police that Natividad possessed a .38 special when Campbell was killed. After learning police recovered a .354 revolver with black grips, Price said he saw Natividad with that type of weapon. (*Id.* ¶ 11). Natividad also claims the Defendants manufactured a story that Natividad stole a two-door Lincoln Continental to tie him to the murder, while concealing evidence that a four-door

Lincoln was seen leaving the murder scene, and that a man nicknamed "Rob" drove a black Lincoln. (*Id.* ¶ 26).

Aside from coaching witnesses and manufacturing a narrative, Defendants also allegedly buried exculpatory evidence. Numerous witnesses implicated Rob in the murder, (*id.* ¶ 13–23, 28), with one police officer allegedly overhearing Rob admit to killing Campbell. (*Id.* ¶ 22). The Defendants also allegedly deep-sixed a statement of an eyewitness, John McCullough, who said "that [Natividad] was not one of the two individuals involved in the killing." (*Id.* ¶ 13). Despite knowing of the evidence implicating Rob, Gallagher approved Natividad's arrest warrant and he was subsequently charged.

Instead of disclosing the exculpatory evidence, Natividad claims prosecutors concealed it and continued to build a case against him. (*Id.* ¶ 31). Both prosecutors sought and obtained phone records from Natividad's family members, and Gallagher approved an arrest warrant for Natividad's uncle, allegedly for witness intimidation purposes. (*Id.* ¶¶ 50, 78). Sax sought *ex parte* bench warrants for exculpatory witnesses, purportedly to conceal them. (*Id.* ¶ 52).

At trial, Natividad was convicted and sentenced to death, and the Pennsylvania Supreme Court affirmed his conviction and sentence. (*Id.* ¶ 34). In 2014, during post-conviction proceedings, a court order granted Natividad access to discovery, where he learned of two previously undisclosed exculpatory statements fingering Rob as the killer. (*Id.* ¶ 35). Natividad then filed a petition seeking relief pursuant to the Post Conviction Relief Act. (*Id.* ¶ 36). Even in the PCRA proceedings, however, certain Defendants continued their alleged cover-up; Dougherty purportedly threatened a

witness's son and presented fabricated notes from a conversation that occurred nearly twenty years prior.  (*Id.* ¶ 37).

Natividad's PCRA petition was dismissed in 2017, but in 2021, his federal *habeas corpus* petition was granted and his conviction vacated.  (*Id.* ¶ 40).  Rather than remain in custody and proceed to a new trial, and afraid to face police and prosecutors again, Natividad pled guilty to third-degree murder.  (*Id.* ¶¶ 41–42).

Natividad now seeks damages for the alleged violations of his constitutional rights.  Defendants moved to dismiss Natividad's original complaint, and Judge Robreno granted the motions in part, while allowing amendment.  (ECF 18).  Natividad filed his amended complaint on May 3, 2023, alleging the individual Defendants violated his due process right to a fair trial under the Fourteenth Amendment (Count I) and conspired to deprive him of his civil rights (Count II).  Count III asserts a *Monell* claim against the City.  Gallagher and Sax move to dismiss Counts I and II based on absolute immunity.  Raley, Dougherty and Mee also move to dismiss Count II, arguing the conspiracy claim is not pled with adequate specificity, while the City moves to dismiss Count III.

II

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Alpizer-Fallas v. Favero*, 908 F.3d 910, 914 (3d Cir. 2018).  The Court takes factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff.  *DelRio-Mocci v. Connolly Props., Inc.*, 672 F.3d 241,

4

245 (3d Cir. 2012). Legal conclusions receive no deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A plaintiff must set forth "a short and plain statement of the claim" which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "sufficient factual matter to show that the claim is facially plausible," and thus enabling the Court to draw the reasonable inference that the defendant is liable for the misconduct. *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). Plausibility does not mean probability, but it asks for more than sheer possibility that a defendant acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The motion to dismiss will be granted pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020) (quoting *Twombly*, 550 U.S. at 555, *cert. denied*, 141 S. Ct. 2670 (2021).

### III

Absolute immunity extends to both in-court activity, such as the presentation of evidence or legal argument, as well as out-of-court behavior "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). In contrast, prosecutors are entitled only to qualified immunity for actions taken in an investigative or administrative capacity. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992).

The Third Circuit employs a two-part test to evaluate such claims. *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). First, courts must "ascertain just what conduct forms the basis for the plaintiff's cause of action," and then it must "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* In determining immunity, courts must examine "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). While it is "tempting to derive bright-line rules" from the Supreme Court's jurisprudence, the Third Circuit has "cautioned against such categorical reasoning" to "preserve the fact-based nature of the inquiry." *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (quoting *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008)).

To determine whether Gallagher and Sax are entitled to absolute immunity, the Court must "parse the fine lines between advocacy and investigation," *id.* at 160, focus on the unique facts of the case, and carefully dissect the prosecutors' actions. *Odd*, 538 F.3d at 210. The onus is on the prosecutor to demonstrate that "absolute immunity should attach to each act he allegedly committed that gave rise to the cause of action." *Fogle*, 957 F.3d at 160 (quoting *Light v. Haws*, 472 F.3d 74, 79 (3d Cir. 2007)).

Asserting absolute immunity in a 12(b)(6) motion is especially challenging because "it is the defendant's conduct *as alleged in the complaint* that is scrutinized." *Id.* (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (emphasis in original). Put another way, to earn absolute immunity, the defendants must show the conduct triggering absolute immunity "clearly appear[s] on the face of the complaint." *Id.* (quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

6

A

Natividad's claims against Gallagher and Sax—violation of due process rights by fabricating evidence and withholding exculpatory evidence and civil rights conspiracy—hinge on the same alleged conduct: (1) Gallagher and Sax coached Byron Price and another adverse witness, Robert Golatt, to manufacture a case against Natividad; (2) Gallagher approved an arrest warrant for Natividad despite knowledge of evidence implicating Rob; (3) Gallagher approved an arrest warrant for Natividad's uncle for witness intimidation; (4) Sax sought bench warrants for exculpatory witnesses so he could hide them; and (5) Gallagher and Sax "approved of and had access to" phone records of Natividad's family members to taint the investigation and falsely implicate Natividad. (Am. Compl. ¶¶ 74–80). In the alternative, Natividad asks for leave to again amend his complaint to add an allegation that Sax violated court orders requiring he disclose exculpatory evidence during the state and federal post-conviction proceedings. (Resp. To Mot. To Dismiss, at 10–11, ECF 28).

1

Natividad claims that as part of an investigative function Gallagher and Sax coached witnesses like Price and Golatt to implicate him. But Natividad needs more than the "naked assertion" that this conduct occurred in the investigatory phase. *See Iqbal*, 556 U.S. at 678. Gallagher and Sax focus on the specific factual allegations and point out it was Price and Golatt's *trial* testimony that directly implicated Natividad, giving them absolute immunity for their alleged conduct. (Mot. To Dismiss, at 9, ECF 23). The amended complaint supports their assertion. Natividad says, "[A]t *trial*, Price testified that he saw Plaintiff with a .357 revolver," and "Robert Golatt, a witness *at the*

7

*criminal trial,* testified also that all individual Defendants had told him about the .357 Magnum in order to implicate Plaintiff." (*Id.* ¶¶ 11, 12) (emphasis added).  Prosecutors are acting as advocates during trial, and at common law prosecutors were absolutely immune "for eliciting false and defamatory testimony from witnesses." *Burns*, 500 U.S. at 489–90; *see also Rose v. Bartle*, 871 F.2d 331, 344 (3d Cir. 1989) (finding that the solicitation of false testimony for grand jury proceedings is "encompassed within 'the preparation necessary to present a case' and therefore immunized.").

2

Next, Natividad contends Gallagher approved his arrest warrant despite knowing of evidence implicating Rob.  The arrest of a criminal defendant and the filing of charges are at the core of the prosecutorial function, and "[a] prosecutor is absolutely immune when making [the decision to initiate a prosecution], even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki*, 969 F.2d at 1464; *see also Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (holding that a prosecutor's filing of an arrest warrant and charging documents are protected by absolute immunity).  This immunity encompasses decisions to continue a prosecution despite conflicting evidence.  *See Imbler*, 424 U.S. at 426 n.24.  Gallagher's decision to approve Natividad's arrest warrant—despite the alleged existence of exculpatory information—was within Gallagher's professional judgment and entitles him to absolute immunity.

3

For similar reasons, Gallagher is also absolutely immune from liability for allegedly approving the arrest warrant for Natividad's uncle.  Although Natividad

alleges this was for "witness intimidation purposes" and was "wholly pretextual," (Am. Comp. ¶ 50), again, a prosecutor is absolutely immune when making the decision to initiate a prosecution, even when acting without a good-faith belief that any wrongdoing has occurred. *Kulwicki*, 969 F.2d at 1464 (citing *Imbler*, 424 U.S. at 427–28) ("The [Supreme] Court has explicitly stated that even groundless charges are protected, in the interest of maintaining vigorous prosecution of crime.").

4

Sax is entitled to absolute immunity for allegedly seeking the bench warrants for exculpatory witnesses to "conceal evidence prior to trial." (Am. Compl. ¶ 77). This is not only because prosecutors are entitled to absolute immunity for seeking bench warrants, *see generally Odd*, 538 F.3d at 212, but also because prosecutors are absolutely immune for failing to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity. *Yarris v. County of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006). Sax sought the bench warrants while acting his in role as an advocate and is entitled to absolute immunity. *Id.*

5

Finally, Natividad alleges that Gallagher and Sax "approved of and had access to" the phone records "[i]n 1996 and prior to [Natividad's] arrest in 1997" as part of an effort to taint the investigation. Preparation for both the initiation of criminal proceedings and trial may require obtaining, reviewing and evaluating evidence, conduct which tends to be prosecutorial in nature. *Schrob v. Catterson*, 948 F.2d 1402, 1414, 1417 (3d Cir. 1991) (citing *Imbler*, 424 U.S. at 431 n.33.). And while timing is not

dispositive, it can be instructive. *See, e.g., Kulwicki*, 969 F.2d at 1465 ("Evidence obtained at or after the filing is likely to be connected with an existing prosecution, and is absolutely protected."). While the complaint alleges the Defendants coached witnesses during the investigative stages, courts may also consider statements made by counsel at oral argument "to clarify allegations in the complaint when the meaning is unclear." *Maio v. Aetna*, 221 F.3d 472, 485 n.12 (3d Cir. 2000). During oral argument on the previous motion to dismiss, Natividad's counsel acknowledged the alleged misconduct "happened between the time of arrest and the time of trial." (Oral Arg. Tr. 17:4-14, ECF 16). Gallagher and Sax are alleged to have obtained the phone records in late 1996 and early 1997, including the time after Natividad's arrest warrant was approved on or around December 31, 1996. Given these alleged facts, the prosecutors were compiling and evaluating evidence to present their case, core prosecutorial functions that entitle them to absolute immunity.

6

Alternatively, Natividad asks for leave to amend his complaint to allege that Sax defied court orders to disclose exculpatory evidence during his post-conviction state and federal proceedings. (Resp. To Mot. To Dismiss, at 10–11).

Absolute immunity extends to post-conviction proceedings, but it may not apply when a prosecutor defies a court's order. *See Munchinski v. Solomon*, 618 Fed. App'x 150, 155–56 (3d Cir. 2015). This is especially so when a court's order does not require the prosecutor to exercise any discretion, leaving him with "little more than a 'ministerial function to perform.'" *Id.* at 155 (citing *Odd*, 538 F.3d at 214) (noting there are "few circumstances under which we would consider the act of disobeying a court

10

order or directive to be advocative"). If compliance with the court order involved judgments about whether evidence was exculpatory, relevant or otherwise privileged, then Sax may still be entitled to absolute immunity. But if the court order was simply a "judicially mandated task" devoid of any discretion, then he will not be entitled to absolute immunity. *Munchinski v. Solomon*, 747 Fed. App'x 52, 60 (3d Cir. 2018). While all existing claims against Gallagher and Sax are dismissed with prejudice, Natividad will be allowed one final amendment to allege Sax defied court orders during post-conviction proceedings.

IV

Raley, Dougherty and Mee move to dismiss Count II, arguing the complaint is not specific enough to state a civil rights conspiracy. To state such a claim, Natividad must allege facts sufficient to show: (1) two or more persons conspired to deprive him of his constitutional rights; (2) one or more of the conspirators performed any overt act in furtherance of the conspiracy; and (3) the overt act injured Natividad in his person or property or deprived him of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators acted under the color of state law. *Jutrowski v. Township of Riverdale,* 904 F.3d 280, 293–94 (3d Cir. 2018).

A conspiracy requires a "meeting of the minds." *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008). Absent direct proof, the agreement can be inferred from circumstantial evidence. *Klein v. Madison*, 374 F. Supp.3d 389, 421 (E.D. Pa. 2019) (quoting *Jutrowski*, 904 F.3d at 295) (circumstantial evidence to support a civil rights conspiracy "may include that the alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific

11

parties to the agreement, the period of the conspiracy, or the object of the conspiracy"). In the context of a § 1983 conspiracy among police officers, agreement may manifest as conversations between officers about the incident, allegedly distorted stories that emerged, an awareness of conflicting stories and irregularities in the series of official investigations into the incident. *Jutrowski*, 904 F.3d at 295.

Accepting all factual allegations in the complaint as true and in the light most favorable to Natividad, the amended complaint plausibly alleges a civil rights conspiracy. All defendant officers were assigned to the squad responsible for the Campbell case, (Am. Compl. ¶ 27), and Natividad alleges conflicting accounts and irregularities in the investigation that could indicate a concerted activity to suppress facts, fabricate evidence and deny Natividad a fair trial. For instance, the complaint alleges numerous statements from witnesses inculpating Rob as Campbell's killer. (*Id.* ¶¶ 16–22). But these conflicting accounts were suppressed, suggesting the officers engaged in concerted activity to hide evidence implicating another suspect. (*Id.* ¶ 83). In another instance, Natividad notes irregularities in the investigation suggesting a concerted effort to manufacture a case against him, namely, that during the PCRA proceedings in 2016, Dougherty threatened McCullough's son and presented a fabricated written annotation of his conversation with McCullough despite stating no notes were taken during a brief conversation at McCullough's home. (*Id.* ¶ 37). Natividad also adequately pleads the overt act and injury requirements. He contends the Defendants' intimidated witnesses, fabricated evidence and manufactured a case against him that denied him a fair trial. (*Id.* ¶ 84(a)–(e)).

12

Furthermore, where substantive § 1983 claims are permitted to proceed, the conspiracy claim may as well. *Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) (citing *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010)); *Thomas v. City of Phila.*, 290 F. Supp.3d 371, 387 (E.D. Pa. 2018) (permitting a civil rights conspiracy claim to survive a motion to dismiss where the plaintiff alleged facts to plausibly suggest that an officer contributed to a false story about a murder). Here, the officers do not move to dismiss Count I, which is the constitutional claim upon which the conspiracy claim is predicated.

While the complaint's allegations about the specific agreement are not extensively detailed, Natividad is not required to prove his case in the complaint. *See Smith v. Washington Area Humane Society*, 19-1672, 2020 WL 6364762, at *8 (W.D. Pa. Oct. 29, 2020). Pre-discovery, it is difficult to plead facts regarding the mindset of alleged conspirators, their communications and any meeting of the minds. *See id*. Still, he has put Raley, Dougherty and Mee on notice, and the civil rights conspiracy claim may go forward.

V

Finally, the City moves to dismiss Count III, the municipal liability claim, arguing the claim is overbroad and insufficiently focused because it does not link previous wrongs to the constitutional violations that occurred here.

Municipalities, like individuals, can be liable under § 1983 for violating a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658,

13

690–91 (1978). A § 1983 claim against a municipality may proceed in two ways: (1) an unconstitutional policy or custom led to plaintiff's injuries, or (2) plaintiff's injuries were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). Municipal liability under § 1983 is "generally not amenable to resolution at the pleading stage, as it requires a plaintiff to plead facts outside his or her personal knowledge." *3909 Realty LLC v. City of Phila.,* No. 21-030, 2021 WL 2342929, at *4 (E.D. Pa. June 8, 2021).

Natividad brings his claim under the "policy or custom" theory. (Am. Compl. ¶¶ 86–93). To prevail, Natividad must point to "an official proclamation, policy or edict by a decisionmaker possessing final authority to establish municipal policy on the relevant subject," or "a given course of conduct so well-settled and permanent as to virtually constitute law." *Forrest*, 930 F.3d at 105–06. "[I]t is not necessary for a plaintiff to establish affirmative acts: 'deliberate indifference, lack of compliance and failure to adhere to . . . standards' may also constitute custom." *Swainson v. City of Phila.*, No. 22-2163, 2023 WL 144283, at *5 (E.D. Pa. Jan. 10, 2023). The plaintiff must also show proximate cause or a "plausible nexus . . . between the municipality's custom and the specific deprivation of constitutional rights at issue." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Proximate cause may exist where the "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom," or the municipality failed to act after being put on notice of a constitutional deficiency. *Id.*

Here, the amended complaint alleges a custom of widespread constitutional deprivations in homicide investigations. (Am. Compl. ¶¶ 57–60(a)–(o)). Natividad

14

specifically describes repeated instances of alleged manipulation of evidence, (*id.* ¶ 60(a)–(b)), supplying information to witnesses and witness intimidation, (*id.* ¶ 60(a)–(k)), and concealing/suppressing exculpatory evidence. (*Id.* ¶ 60(l)–(o)). He even references past, similar misconduct by Defendants Raley, Dougherty and Mee. In a 1991 case, Raley allegedly provided a witness with a pre-written statement. (*Id.* ¶ 60(a)). In a 1997 case, Mee purportedly threatened a witness into recanting his confession. (*Id.* ¶ 60(b)). And in 2003, Dougherty allegedly coerced witnesses, manipulated evidence, and supplied witnesses with false information. (*Id.* ¶ 60(c)). While some of the facts alleged in the amended complaint are distinguishable from the present case, "the breadth of misconduct which they represent is highly relevant to the existence of the City's custom of acquiescence in PPD's allegedly unconstitutional actions." *See Alicea v. City of Phila.*, No. 22-3437, 2022 WL 17477143, at *5–6 (E.D. Pa. Dec. 6, 2022) (quoting *Forrest*, 930 F.3d at 109) ("[T]he sheer volume of complaints . . . reasonably shows the City was aware of the misbehavior yet made a deliberate choice to allow it to continue.").

Finally, the alleged deprivation of Natividad's Fourteenth Amendment right to due process and a fair trial was "made reasonably probable by permitted continuation of the custom." *See Bielevicz*, 915 F.2d at 850. He alleges the City—over many years— permitted police detectives to withhold exculpatory evidence and intimidate witnesses. He claims that same conduct precipitated his conviction, and that is enough to survive a motion to dismiss. *See Alicea*, 2022 WL 17477143, at *6 (finding the plaintiff had pled a nexus between the policy or custom and the deprivation of rights he suffered because "the City permitted the PPD to violate rights by, for example failing to turn over

15

exculpatory evidence, the individual defendants failed to turn over evidence tending to show [the plaintiff's] innocence, and [the plaintiff] was wrongfully convicted").

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.