IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICARDO NATIVIDAD, *Plaintiff,* v. DETECTIVE PAUL RALEY, et al., *Defendants.* | CIVIL ACTION NO. 22-5061 |

**Pappert, J.**                                                                                                                 **April 5, 2024**

## MEMORANDUM

     Ricardo Natividad spent nearly twenty-four years in prison before his first-degree murder conviction was vacated in 2021. Fearful of facing police and prosecutors a second time, Natividad pled guilty to third-degree murder instead of proceeding to a new trial. Seeking damages for alleged violations of his constitutional rights, Natividad sued the police officers and prosecutors involved in his case as well as the City of Philadelphia. In a prior opinion, the Court dismissed the claims against the prosecutors with prejudice based on absolute immunity, though the claims against the police officers and City survived. The Court also granted Natividad leave to amend for the limited purpose of alleging that one prosecutor, Richard Sax, defied court orders to turn over discovery during Natividad's federal habeas proceedings.

     Sax moves to dismiss Natividad's second amended complaint, contending absolute immunity once again shields him from suit. Absolute immunity protects prosecutors in the exercise of their discretionary functions. But it is not all encompassing. The more discretion a judicial order eliminates from the prosecutor's

role, the more likely a violation of that order strips the prosecutor of absolute immunity. Natividad alleges that Sax defied court orders that may have imposed non-discretionary duties to produce evidence from Natividad's file. Discovery may reveal a different result, but at this stage it is not clear from Natividad's second amended complaint that Sax is entitled to absolute immunity. The Court denies his motion accordingly.

I[1]

In December of 2022, Natividad filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming from the investigation of the 1996 murder of Robert Campbell, which resulted in Natividad being convicted for first-degree murder and spending nearly twenty-four years in prison. *See* (ECF No. 1). The case was originally assigned to Judge Robreno, and all defendants moved to dismiss. *See* (ECF Nos. 8, 10). Judge Robreno held oral argument on the motions, granted and denied them in part and allowed Natividad leave to amend his complaint. (ECF No. 18). Natividad filed an amended complaint, (ECF No. 19), and Defendants again moved to dismiss. (ECF Nos. 20, 23). The Court denied the City and police officers' motion, granted the prosecutors' and dismissed all claims against them with prejudice. But the Court allowed Natividad leave to amend to allege a previously unasserted claim, to which Natividad alluded in his response to the prosecutors' motion, that Sax defied court orders during post-conviction proceedings. (ECF No. 32).

---

[1] The Court provided a more comprehensive factual recitation in its previous memorandum. *See* (ECF No. 31). Here, it recounts only the facts necessary for resolving the present motion.

2

Consistent with that instruction, Natividad now contends that Sax, who controlled Natividad's homicide file during all trial, direct appeal, state post-conviction and federal habeas proceedings, masterminded a scheme to withhold court-ordered discovery multiple times during the federal habeas proceedings. (Second Am. Compl., ECF No. 33, ¶ 56). In 2010, Natividad moved for production of discovery materials, which the Commonwealth opposed, asserting there was no more *Brady* material to turn over. (*Id.* ¶ 58). Natividad contends the Commonwealth's position was "patently false" and was based on "known false information" provided by Sax. (*Id.*) Eventually, the habeas court ordered certain discovery be provided, but Natividad alleges it was not provided in full and Sax was "instrumental" in defying the court's order. (*Id.* ¶ 59). Natividad moved for additional discovery, and again, the district attorney's office "falsely asserted that there was no further *Brady* material to disclose." (*Id.* ¶ 60). Natividad argues that Sax violated this order as well when just six pages of discovery were ultimately produced. (*Id.*) After this second order, the DA's office—allegedly at Sax's behest—claimed there was "simply nothing more to turn over." (*Id.* ¶ 61).

Eventually, the court ordered the Commonwealth to turn over Natividad's entire file. (*Id.* ¶ 63). According to Natividad, Judge Rufe did so because Sax defied court orders and withheld evidence. (*Id.* ¶ 63). Natividad also says Sax, seeking to preserve other convictions that he wrongfully obtained, has a history of bad behavior in post-conviction matters. (*Id.* ¶ 65). In that vein, Natividad says that once the Philadelphia District Attorney's Conviction Integrity Unit reviewed his case, it disavowed all prior pleadings and arguments in which Sax purposefully made false statements to courts and defied court orders. (*Id.* ¶ 64). Based on these allegations, Natividad contends that

Sax violated his due process rights, and that this behavior was part of an ongoing conspiracy to conceal evidence. (*Id.* ¶¶ 91, 95).

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87). Even if a party does not make a formal motion to dismiss, the Court may, on its own initiative, dismiss the complaint for failure to state

a claim where the inadequacy of the complaint is apparent as a matter of law. *See, e.g., Zaslow v. Coleman*, 103 F. Supp.3d 657, 664 (E.D. Pa. May 5, 2015).

III

A

Prosecutors are entitled to absolute immunity from suit for actions taken in their roles as advocates for the state. *Odd v. Malone*, 538 F.3d 202, 207–08 (3d Cir. 2008). However, a prosecutor is not absolutely immune from suit based on investigative or administrative actions, or for actions that otherwise fall outside his role as an advocate. *Id.* at 208, 211. In other words, whether absolute immunity applies depends on the nature of the function performed. *Buckley v. Fitzsimmons*, 509 U.S. 259, 267 (1993). When evaluating whether absolute immunity applies, courts conduct a two-step analysis. *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). First, courts "ascertain just what conduct forms the basis for the plaintiff's cause of action," and then "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* The analysis requires a "careful dissection" of the prosecutor's actions that support a plaintiff's claims. *Fogle v. Sokol*, 957 F.3d 148, 161 (3d Cir. 2020) (citing *Odd*, 538 F.3d at 210).

Asserting an absolute immunity defense at the motion to dismiss stage subjects the defendant to a more challenging standard of review than would apply at summary judgment. *Id.* at 160–61. That is because in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized." *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original)). Thus, a defendant must

5

show that conduct triggering absolute immunity "clearly appear[s] on the face of the complaint." *Id.* (quoting *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989)).

B

Natividad contends that Sax violated his due process rights when he defied explicit court orders and withheld exculpatory evidence during Natividad's post-conviction proceedings. (Second Am. Compl., ECF No. 33, ¶¶ 56–65, 91). He alleges the habeas court ordered discovery in August 2011, but it was "not provided in full" and Sax, "having control and dominion over the DA's files in relation to [Natividad], was instrumental in defying the Court's Order by continuing to withhold court-ordered documents." (*Id.* ¶ 59). Natividad moved for additional discovery in 2013, but the DA's office produced just six additional pages, and Natividad contends Sax violated that order as well. (*Id.* ¶ 60). In 2014, Judge Rufe ordered the DA's office to turn over the entire homicide file, "wholly proving," according to Natividad, that Sax withheld court-ordered documents twice before. (*Id.* ¶ 62).

"When the prosecutorial function involves the exercise of discretion . . . the balance between redressing wrongs and preserving the freedom to exercise independent judgment weighs in favor of the prosecution." *Munchinski v. Solomon*, 747 F. App'x 52, 59 (3d Cir. 2018) (citing *Imbler v. Pachtman,* 424 U.S. 409, 422–23 (1976)). But "[t]he more discretion a judicial order eliminates from the prosecutor's role, the more likely it is a violation of that order strips the prosecutor of absolute immunity." *Munchinski*, 747 F. App'x at 58–59. There are few occasions where courts consider disobeying a court order to be advocative, and they are "loath to grant a prosecutor absolute immunity for such disobedience." *Odd*, 538 F.3d at 214. "The prosecutor's duty in the

6

face of such an order (short of challenging the order by appropriate means) is not to advocate, but simply to comply; it is ministerial or administrative rather than advocative." *Munchinski*, 747 F. App'x at 59. *See also Siehl v. City of Johnstown*, 365 F. Supp.3d 587, 598 (W.D. Pa. 2019) (holding prosecutors were not protected by absolute immunity at the motion to dismiss stage where complaint alleged they violated a court order to turn over forensic evidence and its exculpatory results).

C

Whether or not absolute immunity applies hinges on whether Judge Rufe's orders had clear directives or left room for discretion as to what was exculpatory, relevant or privileged. *See Reid v. New Hampshire*, 56 F.3d 332, 337–38 (1st Cir. 1995). The answer to that question is not clear from the face of Natividad's second amended complaint. And where the prosecutor's function is not clear from the complaint, a motion to dismiss based on absolute immunity is properly denied. *Yarris v. County of Delaware*, 465 F.3d 129, 138 (3d Cir. 2006). Sax urges the Court to take judicial notice of Natividad's habeas proceedings, contending the substance of the filings, orders and opinions would provide the necessary context and show Natividad is mischaracterizing Sax and the Commonwealth's actions. (Mot. To Dismiss, ECF No. 37-1, at 11–15).

Judicial notice "should be done sparingly at the pleadings stage." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007). The Court may take judicial notice of court dockets and opinions, but only to establish the existence of the opinion, order or docket entry, not for the truth of contentions or allegations of the parties contained therein.[2]

---

[2]  The Court acknowledges that it may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir. 1999); *M&M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010). Sax contends that Judge Rufe's habeas opinion "makes clear" that Sax and the DA's office complied with all court orders; he further contends that arguments contained in court filings show he did not defy court orders, but rather exercised legitimate prosecutorial discretion. (Mot. To Dismiss, ECF No. 37-1, at 14). Taking judicial notice of the truth of the contents of this opinion—and other filings on the docket—as Sax suggests, "could reach, and perhaps breach, the boundaries of proper judicial notice." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001).

At this stage, the Court must scrutinize Sax's conduct *"as alleged in the complaint."* *Fogle*, 957 F.3d at 161 (quoting *Behrens*, 516 U.S. at 309) (emphasis in original). Natividad alleges that Sax withheld documents in response to orders that imposed potentially non-discretionary duties. *See* (Second Am. Compl., ECF No. 33, ¶¶ 59, 60–61). Discovery may reveal a different result, but Sax has not shown that conduct triggering absolute immunity appears clearly on the face of the complaint.[3] *See Fogle*, 957 F.3d at 161.

---

document. *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Though Sax incorporated one of Natividad's motions for discovery and a portion of Judge Rufe's 2011 order in his motion, (Mot. To Dismiss, ECF No. 37-1, at 2–5), he did not provide the Court the full picture. Specifically, he does not attach the second order that Sax is alleged to have violated, nor the motion that prompted that order.

[3] Sax does not directly address the conspiracy claim (Count II). Where the substantive § 1983 claim is permitted to proceed, the conspiracy claim may as well. *See Thorpe v. City of Phila.*, No. 19-5094, 2020 WL 5217396, at *12 (E.D. Pa. Sept. 1, 2020) (citing *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010)); *Thomas v. City of Phila.*, 290 F. Supp.3d 371, 387 (E.D. Pa. 2018).

IV

Sax also moves separately to strike paragraphs 31, 32, 44, 45, 47, 49, 50, 51, 52, 54, 55, 66, 89, 95 and 97.  (Mot. To Strike, ECF No. 38-1).  He further asks that Charles Gallagher be removed from the case's caption and that Gallagher's name and any conduct attributed to him be stricken from paragraphs 1, 8, 31, 51, 52, 54, 86, 87, 89 and 95.  Sax says those allegations have no bearing on Natividad's remaining claim against Sax and support claims that the Court previously dismissed with prejudice.  (*Id.*)  In response, Natividad says he reasserted the dismissed claims because he wishes to preserve them for appeal.  (Resp. To Mot. To Strike, ECF No. 40, at 2).  Additionally, he argues that all allegations related to Sax are relevant to a motive to conceal evidence and defy court orders.  (*Id.* at 3).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'"  *Steak Umm Co., LLC v. Steak'Em Up, Inc.*, No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing *Johnson v. Anhorn*, 334 F. Supp.2d 802, 809 (E.D. Pa. 2004)).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp.2d 393, 402 (E.D. Pa. 2002).  Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case."  *Ford-Greene v. NHS, Inc.*, 106 F. Supp.3d 590, 615 (E.D. Pa. 2015) (quoting *River Road*

9

*Dev. Corp. v. Carlson Corp.*, No. 89-7037, 1990 WL 69085, at *3 (E.D. Pa. May 23, 1990)).

As an initial matter, Natividad did not need to reassert claims dismissed with prejudice to preserve them for appeal. In the Third Circuit, plaintiffs can appeal dismissals despite amended pleadings that omit those dismissed claims provided repleading the dismissed claims would have been futile. *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007). "Repleading is futile when the dismissal is on the merits. A dismissal is on the merits when it is with prejudice . . . ." *Id.* at 516. Thus, Natividad's reasserted claims against Gallagher and Sax are again dismissed with prejudice under the "law of the case" doctrine. *See In re Westinghouse Sec. Litig.*, No. 91-354, 2005 U.S. Dist. LEXIS 45795, at *12 (W.D. Pa. Jan. 20, 2005) (citing *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir. 1982)).

In similar situations, however, courts have declined to strike paragraphs because dismissed claims are "often repleaded in an amended complaint from a mistaken belief that they must be repled to preserve them for appellate review." *See Gebhart v. Steffen*, 2013 U.S. Dist. LEXIS 148479, at *12–13 (M.D. Pa. Oct. 16, 2013) (citing *Serritella v. Markum*, 119 F.3d 506, 512 n.6 (7th Cir. 1997)). Moreover, the allegations are arguably relevant to any motive Sax would have to defy court orders and conceal discovery. To the extent the challenged allegations are potentially prejudicial or confusing to a jury, the Court can address those concerns through appropriate pretrial orders or rulings at trial. *See Airgood v. Township of Pine*, No. 14-1249, 2016 WL 1247237, at *12 (W.D. Pa. Mar. 30, 2016).

An appropriate Order follows.

BY THE COURT:

_/s/ Gerald J. Pappert_
GERALD J. PAPPERT, J.

11